IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


**DAVID FUNCHES**                                                        **PLAINTIFF**

VS.                                              CIVIL ACTION NO. 3:05CV265-WHB-JCS

**MISSISSIPPI STATE UNIVERSITY**
**AND DAVID LAUGHLIN**                                                  **DEFENDANTS**


## OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment of Defendant Mississippi State University (hereinafter "MSU") and Defendant David Laughlin. Having considered the Motion for Summary Judgment, the Response, the Rebuttal and all attachments to each, as well as supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

### I.  Factual Background and Procedural History

This cause of action arises out of alleged race discrimination in the employment process. Plaintiff David Funches, a member of the black race, was employed by MSU beginning May 1, 2003. His job title with MSU was Farm Laborer at the Brown Loam Branch Experiment Station (hereinafter "Experiment Station") located in Hinds County, Mississippi. Defendant Laughlin was responsible for the daily operations at the Experiment Station during all relevant times. Funches was fired from his employment position effective September

8, 2004. Defendants allege that he was terminated for insubordinate and threatening behavior, while Funches contends that the termination was based on wrongful race discrimination.

Aggrieved by his employment termination, Funches filed the subject suit in this Court on April 27, 2005. The claims in the Complaint are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII") and 42 U.S.C. § 1981. Funches' allegations are well summarized by the following quote from page six of the Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

> Plaintiff claims that Laughlin treated Plaintiff and other African American workers at [the Experiment Station] in a derogatory manner by making racist statements towards Plaintiff and the other African American employees, by frequently telling racist jokes about African Americans and by giving preferential treatment to white employees. Complaint at ¶ 8. He claims that Laughlin gave white employees with less seniority authority over African American employees who had been employed longer at [the Experiment Station]. Complaint at ¶ 9. Plaintiff asserts in his complaint that when he complained about disparate treatment between African American and Caucasian employees, he was labeled a troublemaker. Complaint at ¶ 10. Finally, Plaintiff asserts in the Complaint that he was terminated from his position at [the Experiment Station] by Laughlin, that Laughlin gave him no reason for the termination, and that he was not given the opportunity to appeal his termination. Complaint at ¶¶ 11 and 12.

Id. Funches seeks an unspecified amount of compensatory damages, as well as injunctive relief.

The subject Motion for Summary Judgment was filed by Defendants on June 16, 2006. That Motion is now ripe for consideration.

## II.   Analysis

**A.   Claims Against Defendant Laughlin**

Defendant Laughlin has not been served with process in this suit. That fact is undisputed. Under Rule 4(m) of the Federal Rules of Civil Procedure, Funches had 120 days after the Complaint was filed to serve Laughlin with process. The subject suit was filed on April 27, 2005, and the time limit for service of process under Rule 4(m) has long-since expired. Funches has shown no "good cause" for his failure to serve Laughlin with process. See id. The Court therefore finds that Defendant Laughlin should be dismissed from this cause, without prejudice.

**B.   Wrongful Termination Claim**

   **1.   Legal Standard**

A claim of employment discrimination can be proven through direct evidence or circumstantial evidence. However, proving discrimination through direct evidence is difficult in most cases. Crawford v. Formosa Plastics Corp., Louisiana, 234 F.3d 899, 902 (5th Cir. 2000)(citation omitted). Therefore, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court set forth a standard by which to analyze discrimination claims based on circumstantial

3

evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citation omitted); Evans v. City of Houston, 246 F.3d 344, 350 (5th Cir. 2001). This standard is known as the "McDonnell Douglas burden shifting analysis," or simply the "McDonnell Douglas analysis."

The first step in the McDonnell Douglas analysis is proof of a *prima facie* case of discrimination by the plaintiff. The tests for proving a *prima facie* case vary slightly depending on the type of discrimination alleged. However, each of the groups of tests is based on minor variations of the following four factors: (1) the plaintiff must be a member of a group protected by employment discrimination law of some type; (2) the plaintiff must be qualified for the employment position in question; (3) the plaintiff must have suffered an adverse employment action, i.e., the plaintiff was not hired or promoted, or the plaintiff was fired or demoted; and (4) someone outside of the plaintiff's protected class must have filled the employment position in issue. Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)(citation omitted). "[E]stablishment of a *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated against the employee." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(citation omitted).

If the plaintiff establishes a *prima facie* case of discrimination, then under McDonnell Douglas the burden shifts to

the employer to "articulate a legitimate, nondiscriminatory reason" for the employment decision in issue. Patrick, 394 F.3d at 315 (citation omitted).  This is a burden of *production* as opposed to a burden of *persuasion*, and no credibility assessment can be made at this phase. Reeves, 530 U.S. at 142 (citation omitted).  "As this is a burden of production, the employer need not prove that it was actually motivated by its proffered reason." Patrick, 394 F.3d at 315 (citation omitted).  However, "an employer must articulate a nondiscriminatory reason *with 'sufficient clarity*' to afford the employee a realistic opportunity to show that the reason is pretextual." Id. at 317 (emphasis in original)(citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  The employer's proffered reason for the employment decision may be subjective in nature, but it must be more than vague and conclusory opinions about the plaintiff. Id.

If the employer meets the burden of articulating a nondiscriminatory reason for its employment decision, then the presumption of discrimination created by plaintiff's *prima facie* case is nullified, and the inquiry becomes more fact specific. Patrick, 394 F.3d at 315 (citation omitted).  At this point, the McDonnell Douglas scheme shifts the burden back to the plaintiff to "show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a *pretext for discrimination*." Id. (emphasis added; citation omitted).

5

The <u>Crawford</u> court provided a guideline by which to measure whether an employer's reason for the employment decision was merely a pretext for discrimination.

> A mere scintilla of evidence of pretext does not create an issue of material fact in all cases. As stated by the Supreme Court in <u>Reeves</u>, a plaintiff must present "*sufficient* evidence to find that the employer's asserted justification is false." It is, therefore, possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination. Likewise, if the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent [or direct] evidence that discrimination was the real reason for the adverse employment action. The determination must be made on a case-by-case basis, depending on the nature, extent, and quality of the evidence, as to whether a jury could reasonably infer discrimination.

<u>Crawford</u>, 234 F.3d at 902-03 (emphasis in original; internal citations omitted). If the plaintiff creates a genuine issue of material fact on the pretext issue, then the case must proceed to trial. Conversely, if plaintiff fails in this endeavor, then summary judgment must be granted in defendant's favor.

The ultimate question in any employment discrimination case is of course whether the plaintiff was a victim of intentional discrimination. <u>Reeves</u>, 530 U.S. at 153. Although the burdens of producing evidence shift back and forth under the <u>McDonnell Douglas</u> analysis, the ultimate burden of proving intentional discrimination remains with the plaintiff at all times. <u>Id.</u> at 143 (citation omitted).

**2.   Analysis - Wrongful Termination Claim**

The Court begins by noting that race discrimination claims under Title VII and § 1981 are both governed by the same legal tests. Raggs v. Mississippi Power and Light Co., 278 F.3d 463, 468 (5th Cir. 2002). Therefore, the Court does not differentiate between Funches' Title VII claims and his § 1981 claims in this analysis.

With regard to proof of Funches' *prima facie* case, MSU concedes that the elements set forth in McDonnell Douglas are met. That is, Funches: (1) is a member of the black race, which is protected by employment discrimination law; (2) he is qualified for the Farm Laborer position that he held the Experiment Station; (3) he was fired from that position, which qualifies an adverse employment action; and (4) he was replaced by a person outside of his protected group. Based on these admissions by MSU, the Court finds that for summary Judgment purposes, Funches has met his burden to prove a *prima facie* case of race discrimination.

In issue is whether MSU had a legitimate, nondiscriminatory reason for firing Funches. Defendants' asserted reason for Funches' employment termination follows.

> Defendants terminated Plaintiff's employment for legitimate nondiscriminatory reasons. Defendant Laughlin terminated the employment of Plaintiff because Plaintiff violated university policy by being insubordinate and because Laughlin believed Plaintiff was threatening him. Laughlin Affidavit at ¶ 11.
>                    * * * * *

> The factual account of Plaintiff's last day of work at [the Experiment Station] is undisputed. ... Plaintiff's refusal to meet with Laughlin amounts to insubordination which is grounds for dismissal pursuant to university policy. Bell Affidavit at ¶ 10.  During his encounter with Plaintiff following Plaintiff's refusal to meet, Laughlin believed that Plaintiff was threatening him. Laughlin Affidavit at ¶ 10.  In light of the adversarial nature of the encounter, Plaintiff's yelling, and what Plaintiff actually said to Laughlin, Laughlin's belief that Plaintiff was threatening him was reasonable, and Laughlin acted on that belief in good faith when he terminated Plaintiff's employment.  Defendants' reasons for terminating Plaintiff's employment are legitimate and nondiscriminatory.
> Insubordination is a violation of university policy. Bell Affidavit at ¶ 10. ... Plaintiff failed to follow the direct order of Laughlin, when Laughlin summoned Plaintiff to his office to discuss the suspected policy violations and Plaintiff refused. Plaintiff does not dispute that he refused to meet with Laughlin when asked to do so. Funches Dep. at pp. 19-20. In fact, Plaintiff's exact words in his deposition in reference to Laughlin asking to meet with Plaintiff were, "I just refused to go up there and sign something I didn't know nothing about and I wasn't going to do it." Funches Dep. at pp. 19-20.

Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pp. 8-9. In summary, "[t]he only motivating factors for Plaintiff's termination were his insubordination and Laughlin's reasonable belief that Plaintiff was threatening him." Id. at p. 10 (citing Laughlin Affidavit at ¶ 11).

The Court finds that the reasons articulated by MSU for firing Funches represent legitimate nondiscriminatory reasons for that adverse employment action. Thus the burden shifts to Funches to make a showing that Defendants' asserted reasons for his termination were merely pretexts for discrimination. Plaintiff has

failed in this endeavor. Funches' Response to Defendants' Motion for Summary Judgment contains slightly over two substantive pages. The Response is accompanied by neither a Supporting Memorandum nor any affidavit, deposition testimony or any other type of admissible evidence. The response is full of conclusory allegations, and assertions about what Plaintiff "can" prove.

As required by Rule 56(e) of the Federal Rules of Civil Procedure, once a defendant presents admissible evidence to the effect that a plaintiff's claims are unfounded, the burden is on the plaintiff to come forth with admissible evidence "showing that there is a genuine issue for trial." See also <u>Celestine v. Petroleos de Venezuela SA</u>, 266 F.3d 343, 349 (5th Cir. 2001)(citation omitted). A plaintiff "may not rest on ... mere allegations or denials...." <u>Id.</u> In this case, Funches' brief Response to Defendants' Motion for Summary contains nothing more than unsupported allegations and denials. Accordingly, because Funches has come forth with no proof that Defendants' stated reasons for the employment termination were pretexts for termination, the wrongful termination claim must be dismissed.

**C.   Hostile Work Environment Claim**

Funches asserts that he was subjected to a hostile work environment because Laughlin made racist statements and told race-based jokes. Complaint, unnumbered p. 3, ¶ 8. To make a *prima*

*facie* case for a hostile work environment claim based on racial harassment, the following five factors are typically considered:

> (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) *the harassment complained of affected a term[,] condition or privilege of employment*; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[[1]]

Celestine, 266 F.3d at 353 (citations omitted; footnote and emphasis added). "For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" Id. (citation omitted).

In the subject case, Funches' hostile work environment claim fails because he has not made an adequate showing that "the harassment complained of affected a term[,] condition or privilege of employment[.]" See id. The terms, conditions or privileges of employment in issue are Funches' employment termination and/or preferential treatment allegedly afforded to white employees of the Experiment Station. Complaint, unnumbered p. 3, ¶ 8. As analyzed in section II.B.2. above, Funches was fired for the legitimate and nondiscriminatory reasons of insubordination and exhibiting threatening behavior. Also, Funches has made no connection between the alleged racial comments and preferential treatment allegedly

[1] If the alleged racial harassment is by a plaintiff's immediate supervisor, then only the first four elements apply. Celestine, 266 F.3d at 353-54 (citation omitted).

given to white employees.  Finally and most important, Funches has failed to come forth with any proof that racist comments were actually made by Laughlin or any other employee of MSU.[2]  For these reasons, Funches' hostile work environment claim is without merit and must be dismissed on summary judgment.

**D.    State Law Due Process Claim**

Funches claims that he "was not given the opportunity to aggrieve his termination through due process procedures established by [the] Mississippi Code for state employees [under] § 25-9-127." Complaint, unnumbered p. 2, ¶ 3.  This argument is without merit because under § 25-9-123 and § 25-9-107(c)(vii) of the Mississippi Code, employees of institutions of higher learning are exempt from the provisions of § 25-9-127.  MSU is an institute of higher learning.  As such, MSU was not required to abide by the provisions of § 25-9-127 when it fired Funches.  This claim must therefore be dismissed.

### III.  Conclusion

Based on the holdings presented above, no genuine issues of material fact are presented by Plaintiff's claims, and this case

---

[2]In his response to the Motion for Summary Judgment, Funches pointed the Court to no evidence of racist comments made by Laughlin.  In an effort to substantiate the claim of racial comments, the Court reviewed the Funches' deposition transcript, which was provided by *Defendants* as Exhibit "D" to the Motion for Summary Judgment.  The only evidence of race based comments referenced in Funches' deposition transcript are either hearsay, or are questionable as to their racial nature / meaning.  <u>See</u> Funches deposition transcript, pp. 16-18.

11

must be dismissed at this, the summary judgment phase of the litigation.

    IT IS THEREFORE ORDERED that the Motion for Summary Judgment of Defendant Mississippi State University and Defendant David Laughlin is hereby granted.  A Final Judgment will be entered which dismisses Mississippi State University with prejudice, and dismisses Laughlin without prejudice.

    SO ORDERED this the 2nd day of August, 2006.

<div style="text-align:right">

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE

</div>

tct